IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LORI WHITESELL,                     )
                                    )
        Plaintiff,                  )
                                    )        NO. 3:18-cv-00496
v.                                  )        JUDGE RICHARDSON
                                    )
FMS FINANCIAL MANAGEMENT            )
SERVICES, LLC,                      )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 22) ("Motion").

Plaintiff has filed a response (Doc. No. 31), and Defendant has filed a reply (Doc. No. 34).

## BACKGROUND

Plaintiff Whitesell is a former employee of Defendant FMS Financial Management

Services, LLC ("FMS"). She worked for FMS as an accounts payable clerk from March 23, 2015,

until October 15, 2017. (Doc. No. 1 at ¶ 15). Plaintiff asserts that she has a severe fragrance allergy

that is a disability, as that term is defined under the Americans with Disabilities Act ("ADA"). (*Id.*

at ¶ 20). She contends that she requested accommodation from Defendant, including asking

Defendant to require her co-workers to not wear colognes or perfumes. Plaintiff alleges that the

accommodation was not provided. (*Id.* at ¶¶ 7 and 9). She asserts that Defendant violated her rights

under the ADA through discrimination, retaliation, and failure to accommodate her disability. (*Id.*

at ¶¶ 5-6 and Count I).

FMS is a bookkeeping and payroll company predominately for independently owned

grocery stores throughout the United States. (Doc. No. 32 at ¶ 1). Plaintiff's main job duties were

to perform various accounts payable services for Draeger's grocery chain located in California. (*Id.* at ¶ 6). In May 2017, Draeger's reported a critical error in FMS' payments to its vendors. (*Id.* at ¶ 11). Upon investigation, FMS determined that Plaintiff was responsible for the error; Plaintiff disputes the validity of this determination (but not the fact that FMS made this investigation and determination)[1]. (*Id.* at ¶¶ 16, 18-20).[2]

Soon thereafter, Plaintiff made her first written complaint to her supervisor about strong fragrance in the office. (Doc. No. 32 at ¶¶ 22-23). Defendant initially moved Plaintiff to a different cubicle, set up a scanner at her desk, and hooked her computer to a different printer so that she would not have to walk past other employers to complete job duties involving these machines. (*Id.* at ¶¶ 26 and 30). Defendant provided numerous other accommodations for Plaintiff's sensitivity to fragrance, as set forth below.

In October 2017, while Plaintiff was out on "paid time off," Defendant discovered that Plaintiff was well behind in her work and had, in Defendant's opinion, made attempts to hide this fact from Defendant in order to cover it up. (*Id.* at ¶¶ 91, 97-99, 102-105). Plaintiff denies that she

---

[1] In her Response to the Statement of Undisputed Material Facts in support of Defendant's Motion for Summary Judgment (Doc. No. 32), Plaintiff wrote, "Disputed" to begin her response to Defendant's assertion that it has made this investigation and determination. (*Id.* at ¶ 18). One might think, then, that Plaintiff was disputing that Defendant had undertaken this investigation and then made this determination. In context, though, based on what Plaintiff said later in this response, it is clear that she was not disputing the fact of the investigation and determination, but rather the correctness of the determination made by Defendant that she was responsible for the error.

[2] FMS had instituted a quality control procedure that included running a query prior to the check run for clients, a quality control procedure for which Defendant asserts that Plaintiff was responsible with regard to Draeger's. (Doc. No. 32 at ¶¶ 14 and 16). Defendant avers that it was crucial for this quality control procedure to be completed prior to the check run so that errors would be caught before payment was made. (*Id.* at ¶ 15). Defendant maintains that it investigated this matter and determined that Plaintiff unilaterally decided to run the quality control check in this instance *after* the checks were run, which was an unacceptable departure from Defendant's protocol. (*Id.* at ¶¶ 18-19). Plaintiff disputed that she was responsible for this error. (*Id.* at ¶ 20).

2

was behind in her work or tried to cover anything up. (*Id.*) Defendant terminated Plaintiff's employment on October 16, 2017.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the

3

assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 F. App'x 531, 536-37(6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

The ADA forbids discrimination against a qualified individual on the basis of disability in the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). Plaintiff contends that she is a "qualified individual with a disability" within the meaning of the ADA, with impairments that substantially limit her in one or more major life activities. (Doc. No. 1 at ¶¶ 20, 22 and 24).

4

General Claim of Disability Discrimination

Plaintiff's Complaint alleges (in what is styled as a single count) discrimination based on her disability, retaliation, and failure to accommodate, all in violation of the ADA. Plaintiff's response to the Motion, however, focuses solely on retaliation and failure to accommodate. Defendant argues that Plaintiff has abandoned her claim of disability discrimination in violation of the ADA (hereinafter, "disability discrimination").

Failure to accommodate is a form of disability discrimination. *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 511 (6th Cir. 2020). But it is clear that Plaintiff has chosen to describe and plead it separately from any claim(s) of other forms of disability discrimination. Thus, the Court will do likewise, analyzing her claim of disability discrimination without reference to a failure-to-accommodate theory. There is no question that Plaintiff has not abandoned her claim based on failure to accommodate. But the question remains: what other form(s) of disability discrimination has Plaintiff claimed, and are such claim(s) subject to summary judgment?

In terms of other possible forms of disability discrimination, the Complaint claims at most only that Defendant discriminated against Plaintiff by terminating her due to her disability, (Doc. No. 1 at ¶ 24). But in response to the Motion, Plaintiff has failed even to address any claim of this form of disability discrimination.[3] The Sixth Circuit makes clear that "a plaintiff is deemed to have abandoned a claim when she fails to address it in response to a motion for summary judgment." *Craddock v. FedEx Corp. Servs., Inc.*, No. 2:17-cv-02780-TLP-cgc, 2020 WL

---

[3] To establish a claim that she was fired because of her disability, Plaintiff would have to show that: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) Defendant knew or had reason to know of her disability; and (5) her position remained open while Defendant sought other applicants or replaced her. *Vasser v. Shiroki N. Am., Inc.,* 2:19-cv-00098, 2020 WL 1905182, at *5 (M.D. Tenn. Apr. 17, 2020).

2543297, at *5 (W.D. Tenn. May 19, 2020) (quoting *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013)); *see also Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to a motion for summary judgment constitutes abandonment of the claim). The Court will not "'*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party.'" *Olmstead v. Fentress Cty., TN*, No. 2:16-cv-00046, 2019 WL 1556657, at *13 (M.D. Tenn. Apr. 10, 2019) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992)). Here, Plaintiff is properly characterized as abandoning any claim of disability discrimination based on her termination.[4]

Summary judgment on such a claim is warranted in any event, independent of the rubric of "abandonment," because Defendant carried its burden as to this alleged form of disability discrimination by showing Plaintiff was not replaced, and Plaintiff has not carried her burden to show otherwise. Specifically, Defendant has shown that it is undisputed that Plaintiff was not replaced by Defendant following her termination (Doc. No. 32 at ¶ 110), which is an essential element of such a claim. It is well settled that (once the burden has been shifted to it) the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment. *Mullenix v. Eastman Chemical Co.,* 237 F. Supp. 3d 695, 710 (E.D. Tenn. 2017). Plaintiff failed to do so and, in fact, admitted the absence of this essential element of such a claim. (Doc. No. 32 at ¶ 110).

For these reasons, Defendant is entitled to summary judgment on Plaintiff's claim for disability discrimination (as opposed to retaliation) based on her termination.

---

[4] Although Plaintiff has abandoned any claim that she was terminated because of her *alleged disability*, she has not abandoned her claim—discussed below—that she was terminated for *invoking rights she has under the ADA with respect to her alleged disability*.

6

Failure-to-Accommodate Claim

Under the ADA, "disability" means (A) a physical or mental impairment that substantially limits one or more major life activities; (B) record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). The definition of disability "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A); *Saenz v. LRC Rest. Nashville, LLC,* No. 3:18-cv-01401, 2020 WL 758814, at *3 (M.D. Tenn. Feb. 14, 2020). Plaintiff argues that she has a "disability" under the first definition (actual disability) and has made no argument that she meets the second ("record of") or third definition ("regarded as").[5] (Doc. No. 31 at 6-7). Defendant denies that Plaintiff has a disability. (Doc. No. 23 at 12).[6]

Determination of whether a person is "disabled" under the first definition (actual disability) involves three steps: (1) deciding whether the plaintiff suffers from a physical or mental impairment; (2) deciding what major life activity the plaintiff claims is limited by that impairment and whether that activity constitutes a "major life activity" under the ADA; and (3) deciding whether the identified impairment substantially limits that life activity. *See Garcia v. NYC Health & Hosps. Corp.*, 19 Civ. 997 (PAE), 2019 WL 6878729, at *10 (S.D. N.Y. Dec. 17, 2019) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)).

---

[5] The Complaint alleges that Defendant perceived or regarded Plaintiff as having a disability, Doc. No. 1 at ¶ 21, but Plaintiff has not pursued that theory, and the Court will not *sua sponte* comb the record in order to support that theory on behalf of Plaintiff. *Olmstead,* 2019 WL 1556657, at *13. Thus, this theory is deemed abandoned.

[6] At times herein, the Court refers to the Plaintiff (or "a plaintiff") being "disabled," rather than as "[having a] disability." When it does so, the Court does so either because it is quoting or citing to a source that used that term, or to enhance the conciseness and readability of its individual sentences. The Court by no means intends to imply that persons with disabilities should be labeled with the overarching adjective, "disabled," which could be taken to imply obtusely that a person with a disability somehow cannot or does not transcend his or her disability.

7

Effective January 1, 2009, Congress enacted amendments to the ADA (known as the "ADAAA") to ensure "a broad scope of protection to be available under the ADA." *Saenz*, 2020 WL 758814, at *3 (quoting the ADAAA). Despite this more lenient standard, however, "not every impairment will constitute a disability within the meaning [of the ADAAA]." *Id.* (citing 29 C.F.R. § 1630.2(j)(1)(ii)). Moreover, the ADAAA "left untouched the plaintiff's burden of proof in a disability case; he still has to prove he has a disability." *Id.* (quoting *Lloyd v. Hous. Auth. of the City of Montgomery, Ala.,* 857 F. Supp. 2d 1252, 1263 (M.D. Ala. 2012)).

Plaintiff asserts that she has a severe fragrance allergy. She has stated that she is also allergic to smoke and chemicals.[7] (Doc. No. 26-1 at 65).[8] Plaintiff testified that when she was exposed to her co-workers' perfume, her throat would close, her vocal cords would close, she could not get air or breathe, she would become lightheaded and dizzy, she would develop a headache or migraine headache, and she would gag, cough and stop breathing. (Doc. No. 35 at ¶¶ 6-8; Doc. No. 26-1 at 54-55). She also stated that she can have these allergic reactions at the grocery store or Target and that it has been hard for her to attend church because of them. (*Id.* at 66). On her Request for Reasonable Accommodation form submitted to Defendant during her employment, she stated that she was having difficulty performing all job functions. (Doc. No. 32 at ¶ 56; Doc. No. 26-6). The accommodation she requested on this written form was: "No Perfume/Cologne or Body Sprays Allowed, very mild scented hand lotion/body lotion **No Floral scents**" (*Id.* at 3).

---

[7] Plaintiff could not provide an exhaustive list of the allergens that bothered her, as she does not know what will affect her until it actually affects her. (Doc. No. 32 at ¶ 65).

[8] The page citation here, and in other places herein where deposition testimony is cited, is to the page number of the applicable deposition transcript, not the page numbers placed on the filed document by the Clerk's Office.

On September 7, 2017, Plaintiff had an allergic reaction at work that resulted in another employee calling an ambulance. (Doc. No. 32 at ¶¶ 76-77). Plaintiff reported that this episode was caused by a co-worker intentionally trying to kill her by wearing perfume and by an employee sneaking into her cubicle and spraying perfume. (*Id*. at ¶¶ 81-82).[9] Plaintiff claims that Jon Cline, Vice President of Client Support and a partner at FMS, told her, "I'm not going to fire you, but why would you want to work here if you're unhappy?" (Doc. No. 32 at ¶ 83).

Plaintiff saw an allergy specialist, Dr. Susan Higgins, on June 16, 2017. (Doc. No. 26-1 at 31). Dr. Higgins gave Plaintiff a note for her employer that stated: "Patient has a documented medical condition that is made worse by exposure to strong fragrances such as perfumes, etc. She must strictly avoid exposure to strong fragrance including perfume in the workplace." (Doc. No. 32 at ¶ 42; Doc. No. 26-5).

Dr. Higgins later reported, in response to Defendant's "Request for Information from Health Care Provider," that Plaintiff had a physical or mental impairment of "cough, rhinitis, and paradoxical vocal cord dysfunction," that the impairment was permanent, and that the impairment affected a major life activity, although she did not identify what major life activity was affected by Plaintiff's impairment.[10] (Doc. No. 26-6 at 4). Dr. Higgins also indicated that Plaintiff's

---

[9] Defendant investigated these allegations, including reviewing video footage of the office and interviewing employees, and was unable to substantiate any of Plaintiff's claims. (Doc. No. 32 at ¶¶ 84-86). To be clear, the Court cannot construe Plaintiff's report as anything other than one asserting that she was the victim of attempted murder as such is defined under Tennessee law.

[10] The Complaint alleges that Plaintiff's disability "affects the major life function of breathing." (Doc. No. 1 at ¶ 6). Plaintiff asserts, in response to the Motion, that she is limited in the major life activities of breathing and thinking. (Doc. No. 31 at 7). Although thinking is a "major life activity" under the ADA as expanded by the ADAAA, 42 U.S.C. § 12102(2)(A), Plaintiff mentions a limitation in "thinking" not at all in the Complaint and only once in her response to the Motion. She has presented no medical evidence or argument indicating that her impairment limits her thinking. Moreover, she has neither argued nor presented medical evidence to support a claim that her ability to think is "substantially limited" by her impairment. Because Plaintiff did not assert

9

impairment substantially limits one or more major life activities (which she does not identify) and results in the functional limitation of "unable to tolerate exposure to strong fragrance odors such as perfumes."[11] (*Id*. at 5). The Court will give little weight to Dr. Higgins' assertion that Plaintiff's impairment "substantially limits" one or more major life activities because she has little or no applicable expertise regarding that issue; whether an impairment "substantially limits" an activity is a legal conclusion, not a medical one, and there is no evidence about why Dr. Higgins concluded that the term applied or even what she meant by that term.

Dr. Higgins also stated that this functional limitation impacts Plaintiff's ability to perform the essential functions of her job (although she does not indicate what she believes those essential functions to be) because she "has respiratory difficulty when exposed to perfume fragrance."[12] (*Id*.) There is no evidence before the Court that Dr. Higgins was aware of the essential functions of Plaintiff's job; although Plaintiff herself conceivably could have informed her, there is no evidence of whether, and if so how accurately, Plaintiff did so. As for what possible accommodation might enable Plaintiff to perform the essential functions of her job, Dr. Higgins suggested "[a]void exposure to fragrance/perfume." (*Id*.)[13]

---

such a limitation in her Complaint, Defendant understandably did not argue that this major life activity was not limited and, in response, Plaintiff has not supported any such claim. Plaintiff has failed to demonstrate that her ability to think is substantially limited by her allergies.

[11] The description "[u]nable to tolerate exposure to strong fragrance" is far from precise and, moreover, not clearly the subject of any medical expertise. This statement does not help Plaintiff much because Dr. Higgins does not state what she means by "unable to tolerate" and it is unclear how that statement constitutes an expert opinion as opposed to a lay observation.

[12] Notably, Dr. Higgins did not identify these "respiratory difficulties" as an impairment separate from the stated impairment of "cough, rhinitis, [and] paradoxical vocal cord dysfunction."

[13] Dr. Higgins referred Plaintiff to an ear, nose, and throat doctor who specializes in vocal cord issues, and that doctor diagnosed Plaintiff with acid reflux and stated that she did not have any

The Court will accept, for purposes of this Motion, Dr. Higgins' statement that Plaintiff has a physical impairment of "cough, rhinitis, and paradoxical vocal cord dysfunction." As noted above, however, Dr. Higgins does not identify what major life activity is affected by this physical impairment.[14] Merely having an impairment does not make one disabled for purposes of the ADA. *Jackson v. Oil-Dri Corp. of Am.*, No. 3:16-CV-189-DMB-RP, 2018 WL 1996474, at *6 (N.D. Miss. Apr. 27, 2018). Claimants also need to demonstrate that the impairment substantially limits a major life activity. *Id*.

In other words, Plaintiff must show that her "cough, rhinitis, and paradoxical vocal cord dysfunction" not only *affect* a major life activity but also "substantially limit" one or more major life activities. 42 U.S.C. §12102; 29 C.F.R. § 1630.2(j). An activity is "substantially limited" when an individual cannot perform that activity as an average person in the general population could perform it, or if she faces significant restrictions in the condition, manner, or duration under which she can perform the activity. *Svoboda v. Timkensteel Corp.*, Case No. 5:18cv01443, 2020 WL 1513710, at *7 (N.D. Ohio Mar. 30, 2020).

Federal regulations provide that the term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard.

An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to

---

[14] Under the expanded definition in the ADAAA, "major life activities" include, but are not limited to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working. 42 U.S.C. § 12102(2)(A); *Saenz*, 2020 WL 758814, at *3.

sign of paradoxical vocal cord movement. (Doc. No. 32 at ¶ 51). Plaintiff did not follow up with this doctor and stated that the acid reflux medicine made her worse. (*Id*. at ¶ 52).

most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j). An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. *Id*.[15]

In determining whether Plaintiff's condition substantially limits her ability to breathe, the Court should consider: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact (or the expected permanent or long-term impact) resulting from the impairment. *Gergen v. City of Kentwood*, No. 1:09-CV-127, 2010 WL 2010878, at *2 (W.D. Mich. May 18, 2010) (citing 29 C.F.R. §1630.2(j)). The question must be answered on a case-by-case basis, taking into account the actual experience of the individual and the impact of the impairment on his or her daily life. *Boike v. AKAL Security, Inc.*, Case No. 2:17-cv-10109, 2019 WL 4747735, at *5 (E.D. Mich. Sept. 30, 2019). The Court does not doubt the severity of Plaintiff's allergic reactions or the fact that her sensitivity is likely a permanent one. Moreover, it appears that these reactions clearly affect Plaintiff's ability to breathe when they are occurring. But it is also clear that these reactions occur only when certain substances are present.

Numerous courts have found that an employee's sensitivity to particular substances was not a disability if the plaintiff was able to work and breathe in the absence of those substances. In *Svoboda*, the court stated: "While asthma, allergies and 'bronchitis-related conditions' are physical impairments that can affect an individual's major life activity of breathing, these illnesses present in varying levels of severity and [a plaintiff] must still prove that [his] condition, be it asthma,

---

[15] Neither party has directed the Court to any post-ADAAA cases interpreting this statement concerning recurrent but episodic impairments or impairments in remission.

allergies or bronchitis, substantially limits his ability to breathe." *Svoboda*, 2020 WL 1513710, at *7 (quoting *Godbold v. Trinity Prot. Servs., Inc.,* No. 14-3546, 2017 WL 2579020, at *10 (D. Md. June 12, 2017)).[16] In *Svoboda*, the plaintiff had respiratory sensitivities to airborne agents that existed only at his place of work, which the court found was not enough to substantially limit the major life activity of breathing. *Id.* at *8.[17]

In *Stowell v. Open Door Mission*, a Fair Housing Act ("FHA") case,[18] the plaintiff asserted that she was handicapped because of "multiple chemical sensitivities." *Stowell*, 8:17CV75, 2017 WL 1380537, at *1 (D. Neb. Apr. 17, 2017). The court, citing cases where occasional allergic or asthmatic reactions had been found not to rise to the level of "substantially limiting" a major life activity, found that the plaintiff's allegations were insufficient to establish that she had a handicap. *Id.* at 2.

Similarly, in *Hustvet v. Allina Health Sys.*, 283 F. Supp. 3d 734 (D. Minn. 2017), the court found that the plaintiff's "garden-variety allergies" to various foods, grass, pets, and trees did not substantially limit her ability to perform major life activities. *Id.* at 740. The court noted that the plaintiff sometimes had to "avoid certain fragrances and chemicals by relocating herself farther away from the sources of the offending emanation." *Id.* It found, however, that a reasonable jury

---

[16] In *Svoboda*, the testimony from all examining physicians was that the condition did not substantially limit any major life activity. *Svoboda*, 2020 WL 1513710, at *8. Here, Plaintiff's physician indicated that Plaintiff's condition substantially limited a major life activity, but she did not identify what that activity was.

[17] *See also Jackson*, 2018 WL 1996474, at *6 (individuals suffering from respiratory sensitivities to airborne agents cannot show a substantial limitation on the major life activity of breathing when those agents exist only at their places of work).

[18] The FHA defines "handicap" in the same way as the ADA defines "disability." 42 U.S.C. § 3602(h).

13

could not find that the plaintiff was disabled on the basis of her allergies and chemical sensitivities.[19] *Id*.

In *Walker v. Town of Greeneville*, admittedly a pre-ADAAA opinion, the plaintiff was claustrophobic, described by the court as an "intermittent, episodic impairment." *Walker*, 347 F. Supp. 2d 566, 571-72 (E.D. Tenn. 2004). Assuming, for purposes of the pending motion, that an intermittent, episodic impairment could be a disability, the court nevertheless concluded that the plaintiff was not substantially limited in major life activities. The court stated that it had to consider the overall effects of the plaintiff's impairment, not just when those effects were the most severe. *Id.; see also Horn v. Knight Facilities Mgmt-GM, Inc.*, No. 11-13799, 2012 WL 6015890, at *7 (E.D. Mich. Dec. 3, 2012) (nothing in the ADAAA has changed the general holding that a "transient adverse reaction when exposed to a specific noxious irritant in the workplace is not a disability for purposes of the ADA.")

On the other hand, a district court in Arkansas has found otherwise in a Rehabilitation Act case,[20] stating: "Following the passage of the ADAAA, . . . courts have consistently found fragrance sensitivity to be a disability." *Rotkowski v. Ark. Rehabilitation Servs.*, 180 F. Supp. 3d 618, 623 (W.D. Ark. 2016). That case involved a motion for judgment on the pleadings, and the court held that the plaintiff had plausibly alleged that her fragrance sensitivity constituted a disability. *Id*. at 624 (citing cases);[21] *see also Hawkins v. Ark. Dep't of Human Servs.*, No.

---

[19] The plaintiff had also asserted that she had an immune system disorder, but the court found no medical evidence of that impairment. *Hustvet*, 238 F. Supp. 3d at 740.

[20] The standards used in determining whether the Rehabilitation Act has been violated in a complaint alleging employment discrimination are the same as those applied under the ADA. 29 U.S.C. § 794(d).

[21] In *Bouard v. Ramtron Int'l Corp.*, cited by the court in *Rotkowski*, the court found that the plaintiff had raised a genuine issue of material fact as to whether her allergy constituted a disability.

4:14CV00546-JLH, 2017 WL 10621235, at **5-6 (E.D. Ark. Apr. 3, 2017) (on a motion for summary judgment, court found plaintiff had shown that her scent sensitivity substantially limited her ability to perform major life activities such as working, breathing, and thinking).

The plaintiff in *Lima v. Middlesex Sheriff's Office*, Civil Action No. 19-11372-RGS, 2020 WL 823088 (D. Mass. Feb. 19, 2020) allegedly suffered from "occupational asthma." *Id*. at *5. The court, noting that unobstructed breathing clearly qualifies as a major life activity, held that, *for purposes of a motion to dismiss*, the plaintiff had sufficiently alleged the "fact specific question" of whether he was substantially limited in his ability to work or to breathe. *Id*. at *6. The *Lima* court did note, however, at least one other court that declined to find that a plaintiff's occupational asthma substantially limited her breathing. *Id*. In *Adkins v. Cabell Huntington Hosp., Inc.*, Civil Action No. 3-10-0814, 2011 WL 4458759, at *3 (S.D. W.V. Sept. 23, 2011), the court found the nature of the plaintiff's symptoms was transient, as she experienced them only at her workplace.

In *Brady v. United Refrigeration, Inc.*, Civil Action No. 13-6008, 2015 WL 3500125 (E.D. Pa. June 3, 2015), the court found that the plaintiff had offered sufficient evidence that her sensitivity to fragrances substantially limited a major life activity. *Id*. at *11. She had sought medical care from a number of physicians and specialists for five years, allegedly experienced frequent debilitating headaches that often left her unable to concentrate or focus for a number of hours, and she had provided to the defendant substantial medical documentation of her condition.

---

*Bouard*, Civil Action No. 12–cv–00494–WYD–MJW, 2013 WL 5445846, at *8 (D. Colo. Sept. 27, 2013). In *Zandi v. JVB Fort Wayne Comm. Schs.*, No. 1:10-cv-395-JVB, 2012 WL 4472006, at *5 (N.D. Ind. Sept. 27, 2012), also cited in *Rotkowski,* the defendant actually *conceded* that the plaintiff had a disability covered by the ADA.

After review of the arguments and the above cases, the Court assumes that Plaintiff's impairment affects her breathing. It does *not* find, however, that Plaintiff's impairment substantially limits her breathing as that term is defined and interpreted under the ADA. Defendant has carried its burden to show a lack of substantial limitation of Plaintiff's major life activities, pointing to the fact that she experiences the allergy symptoms only when she is exposed to strong odors and, therefore, only sporadically, and identifying cases in which such occasional allergic reactions have been found to *not* substantially limit a major life activity for purposes of the ADA. On the other hand, Plaintiff, unlike the plaintiffs in the cases she cites, has not come forward to carry her resulting burden with sufficient evidence, backed by medical support, that her condition is not merely transient or that the limitation it causes is substantial.

Accordingly, the Court finds that Defendant is entitled to summary judgment on the issue of whether Plaintiff's impairment substantially limits the major life activity of breathing.

Conclusion

For the reasons explained above, the Court finds that Defendant has carried its burden to show that Plaintiff does not have a "disability," as that term is defined in the ADA and interpreted by the courts. Plaintiff, as the non-moving party, has not come forward with specific citations to the record to show otherwise. Because Plaintiff has failed to show that she has a disability, her failure-to-accommodate claim fails. Accordingly, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's discrimination and failure to accommodate claims.

**ADA RETALIATION**

Plaintiff also alleges that Defendant retaliated against her for exercising protected rights under the ADA. A plaintiff need not have a disability to assert a claim of retaliation under the ADA. *Mullenix,* 237 F. Supp. 3d at 710. Under the ADA, no person shall discriminate against any

16

individual because such individual has opposed any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a); *Mullenix,* 237 F. Supp. 3d at 710. The protected act is a good-faith request for reasonable accommodations. *Hopper v. Berstein Allergy Group, Inc.*, Case No. 1:18-cv-671, 2020 WL 2526121, at *9 (S.D. Ohio May 18, 2020) (citing *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 777, n.8 (6th Cir. 2011)).

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate: (1) she engaged in protected activity; (2) her engagement in that protected activity was known to her employer; (3) her employer, thereafter, took an adverse employment action against her; and (4) a causal link exists between her engagement in the protected activity and the adverse employment action. *O'Gwynn v. Rutherford Cty., Tennessee*, No. 3:17-cv-00503, 2018 WL 5830834, at *4 (M.D. Tenn. Nov. 6, 2018).

The causal connection element requires a plaintiff to produce sufficient evidence to infer that an employer would not have taken the adverse employment action had the plaintiff not engaged in a protected activity. *Mullenix*, 237 F. Supp. 3d at 710-11. A plaintiff must produce sufficient evidence that she suffered the adverse employment action only because of her protected activity. *Schwendeman v. Marietta City Schs.*, --- F. Supp. 3d ---, 2020 WL 519626, at *16 (S.D. Ohio Jan. 31, 2020). "That is, Plaintiff must establish that nothing he did, such as poor performance or attitude, precipitated the adverse employment action." *Id*. (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000)). The plaintiff must show "but-for" causation. *Singh v. Vanderbilt Univ. Med. Ctr.*, No. 3:17-cv-00400, 2020 WL 243711, at *11 (M.D. Tenn. Jan. 16, 2020).

There is no dispute that Plaintiff's requests for accommodation were protected activity under the ADA, that Defendant knew about those requests, and that Defendant terminated her

employment. Defendant contends that Plaintiff cannot, however, show a causal link between her requests for accommodation and the termination of her employment.

The facts surrounding Plaintiff's termination are relevant here. On or about October 3, 2017, Defendant had the carpets in the office cleaned due to a potential mold issue. (Doc. No. 32 at ¶ 88). Plaintiff got sick that day, took paid time off ("PTO"), and went home for three workdays. (*Id.* at ¶¶ 88-90). While Plaintiff was out, other employees had to fill in for her. (*Id.* at ¶ 91).

Although the above facts are undisputed, Defendant asserts (and supports with evidence) other facts that Plaintiff does dispute. Specifically, Defendant claims that the employees filling in for Plaintiff at this time discovered that Plaintiff's work was well behind, *weeks* behind in certain circumstances. (*Id.* at ¶ 97). Defendant also claims that it discovered that Plaintiff had not been updating her client notes and that product transfers and payables had not been done. (*Id.* at ¶¶ 98-99).[22]

In disputing these facts, Plaintiff states that "once she was fully trained on her work,"[23] she was never behind. (*Id.* at 97-99; Doc. No. 33 at ¶ 3). Plaintiff also asserts that she was "never talked to, counseled, written up, or addressed about any such issue," (*id.*), but there is no evidence that Defendant was *aware* of this issue until she was absent from work and others attempted to cover her job.

---

[22] Plaintiff does not dispute that Defendant's clients have weekly deadlines that are non-negotiable and it is essential that FMS provide accurate, timely services to its clients. (Doc. No. 32 at ¶ 92). She also agrees that a key to Defendant's ability to provide quality services to its customers is having detailed up-to-date client notes, which are housed on FMS' internal network. (*Id.* at ¶ 96).

[23] Plaintiff does not explain what this quoted phrase means or when she allegedly was "fully trained" on the work. The Court notes that, at the time of this incident Plaintiff had been working for Defendant for more than two years.

18

Defendant refers to the common email address and phone number that it undisputedly had established to ensure that these types of issues did not occur, and asserts that Plaintiff unilaterally changed the latter and directed Drager's vendors not to use the former and instead use Plaintiff's email address.[24] (Doc. No. 25 at ¶ 16; Doc. No. 32 at ¶¶ 100, 102-03). Cline testified that they discovered that Plaintiff had the client and vendors call just *her* phone number so that it went to just *her* voice mail, so no one was getting notifications about the issues. "[W]e find out that she has unilaterally made the decision to abandon the consolidated – or the combined email address they were given and have it just come to hers." (Doc. No. 26-9 at 101)). Defendant determined that Plaintiff made these changes in order to preclude it from discovering how far behind she was in her work, and Defendant considered that an act of deception. (Id. at ¶¶ 104-05). Therefore, according to Defendant, it had issues with both the quality and quantity of Plaintiff's work and it also considered Plaintiff's "cover-up" to be deceptive, so it decided to terminate her employment. (*Id.* at ¶¶ 106-07).

Plaintiff denies that she changed the phone number, directed Drager's vendors away from the common email address, or precluded anyone else of being notified of any issues. (*Id*. at ¶¶ 102-105). She stated in her Declaration that she never, in communications with the vendors, directed them to email only her instead of the common email box. (Doc. No. 33 at ¶ 5). She stated, "I certainly never tried to deceive FMS about anything." (*Id*.) She contends that Defendant was tired

---

[24] As Cline testified, and Plaintiff does not dispute, in order to ensure quality service to its clients, FMS set up a common email mailbox for vendors and clients to use, as well as a phone number that would ring to multiple employees; the purpose was to ensure that if any issues arose, someone at FMS could address them, regardless of whether a particular contact employee was absent from work. (Doc. No. 32 at ¶ 93). As Cline testified, and Plaintiff does not dispute, FMS put these safeguards in place to ensure that no balls were dropped. (Doc. No. 32 at ¶ 94).

of dealing with her health condition and therefore terminated her employment. (Doc. No. 32 at ¶ 107).

Defendant argues that Plaintiff's only basis for alleging a causal connection between her protected activity and her termination is the temporal proximity—*i.e.*, she requested an accommodation in June 2017, and she was fired in October 2017. Plaintiff does argue that temporal proximity is a valid basis from which to draw an inference of retaliatory motivation, but she does not connect her request for accommodation in June with her termination in October. (Doc. No. 31 at 5-6). Instead, she attempts to connect her *PTO in October* with her termination, apparently asserting that her PTO in October reflected the granting of an additional request for accommodation. To support that assertion, she cites a case from this Court in which Judge Wiseman found that a request for additional leave constituted a good-faith request for reasonable accommodation, *Burress v. City of Franklin*, 809 F. Supp. 2d 795, 815 (M.D. Tenn. 2011).[25]

The Court does not dispute that a request for PTO can be a cognizable request for reasonable accommodation. But the only accommodation Plaintiff requested was enforcement of a scent-free or limited scent workplace, not PTO. All employees with Defendant earned PTO and could use it as needed. (Doc. No. 26-1 at 11). It was a benefit, not an accommodation. There is no evidence that Plaintiff discussed PTO with Defendant as a reasonable accommodation or that Defendant refused to allow Plaintiff to take her earned PTO. The fact that she took PTO right before the decision was made to fire her is irrelevant except to the extent that, without her taking PTO and others having to cover her job, Defendant supposedly would not have known about

---

[25] In *Burress*, the Plaintiff had been on unpaid leave for 24 weeks, awaiting and then having a liver transplant. When he attempted to return to work on light duty, he was terminated. The Court held that his act of notifying the defendant that he needed a few additional weeks before returning to work was a request for an accommodation. *Burress*, 809 F. Supp. 2d at 815-16.

Plaintiff's failures at her job (being behind and trying to cover it up). But it was not a new request for an accommodation.

Temporal proximity between the protected activity and the adverse employment action is sometimes, but not always, sufficient to demonstrate causation. *Schwendeman*, 2020 WL 519626, at *16. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. *Id*. In other words, the plaintiff must offer other indicia of retaliation. Here, Plaintiff has not presented evidence of retaliatory conduct; indeed, the record reflects that Defendant's reaction to receiving her requests for accommodation was not to punish or terminate her, but rather to "bend over backwards" to try to accommodate Plaintiff's fragrance sensitivity. Defendant not only told other employees not to wear fragrance (whether the employees followed this directive or not), but it also installed a printer and air purifiers in Plaintiff's cubicle, moved Plaintiff numerous times (including to the CEO's office with a door) to try to distance her from scents, provided her with masks to wear, established a scent-free restroom, changed to natural cleaners for the office, conducted air quality tests in the office, and made plans to enclose her workspace in plexiglass.

Defendant has carried its initial burden to show the absence of a genuine issue of material fact as to a causal connection, and the Court finds that Plaintiff has not carried her resulting burden to show evidence of a causal connection between her request for accommodation and Defendant's decision to end her employment.

Even if she had carried that burden, however, she would not necessarily prevail; instead, the burden would then shift to Defendant to offer a legitimate, non-discriminatory reason for terminating Plaintiff's employment. *Singh*, 2020 WL 243711, at *11. Although Plaintiff contends

that Defendant is unable to articulate any reason in the two months immediately prior to her termination as a basis upon which it terminated Plaintiff (Doc. No. 31 at 9), Defendant *has* articulated its reasons, and they involve Plaintiff's activity, or lack thereof, during the time immediately before Plaintiff's October 2017 PTO, immediately before she was fired. That activity, as noted above, included falling behind in her time-sensitive work and trying to cover that up. Defendant was not aware of that misconduct until Plaintiff's PTO in October. Defendant has met its burden here by articulating the above-described reasons for firing Plaintiff. Thus, the burden shifts to Plaintiff to show that Defendant's proffered reason was merely pretext for discrimination. *Id*.

A plaintiff may establish pretext by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination. *Marshall v. The Rawlings Co., LLC*, 854 F.3d 368, 379 (6th Cir. 2017). Plaintiff argues that Defendant's stated reason for termination has no basis in fact and is insufficient to explain Defendant's action of terminating Plaintiff. (Doc. No. 31 at 9) (asserting that Defendant's reason for termination "has no basis in fact and is insufficient to explain Defendant's actions.").

Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally retaliated against the plaintiff remains at all times with the plaintiff. *Shoemaker v. ConAgra Foods, Inc.,* 219 F. Supp. 3d 719, 729 (E.D. Tenn. 2016). Thus, Plaintiff must point to evidence indicating (to the degree necessary to raise a genuine issue of material fact) that the true reason for her termination was not her falling behind in work and trying to cover it up, but rather was her request for an accommodation.

Plaintiff contends, as noted above, that Defendant is unable to articulate anything allegedly worthy of termination that happened in the two months immediately prior to her firing, but that

statement is simply not true. Indeed, she herself actually acknowledges, by attempting to discount them, that Defendant has articulated just such circumstances; as noted above, she argues that Defendant's reason lacks a factual basis and is insufficient to explain Defendant's decision to terminate Plaintiff. (Doc. No. 31 at 9). She argues, in response to the Motion, that because she has denied the alleged misconduct of being behind in her work and then changing telephone numbers and email addresses to cover it up, she has shown a genuine issue of material fact to be decided by the trier of fact. (*Id.*) In short, when all is said and done, Plaintiff admits that Defendant has articulated reasons, but she disputes the factual underpinning of those reasons.

In order to show pretext, however, Plaintiff must show more than a dispute over the facts upon which her termination was based. She still has the burden to show retaliation. Moreover, so long as an employer held an "honest belief" in its proffered reason, the employee cannot establish pretext simply by arguing that the reason was incorrect. *Wyatt,* 2019 WL 6682197, at \*18 (citing *Hawkins v. Center for Spinal Surgery*, 34 F. Supp. 3d 822, 844 (M.D. Tenn. 2014)). "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Id.* (quoting *Chen v. Dow Chemical Co.*, 580 F.3d 394, 401 (6th Cir. 2009)). Thus, even if the Court were to accept Plaintiff's argument that Defendant's assertion that she was well behind in work and covering it up was not true (was "mistaken"), it must determine whether Defendant held an honest belief in that reason.

Plaintiff must put forth evidence that Defendant did not honestly believe that she in fact had been behind in her work and had attempted to deceive her employer. *Hawkins*, 34 F. Supp. 3d at 844. In determining whether Defendant had an "honest belief" in its stated reason for ending Plaintiff's employment, the Court must determine whether Defendant has established a reasonable

23

reliance upon the particularized facts that were before it at the time the decision was made. *Id.* at 845. Defendant is not required to show that the decisional process it used was optimal or that it left no stone unturned. Rather, the key inquiry is whether Defendant made a reasonably informed and considered decision. *Id.*; *see also Wyatt*, 2019 WL 6682197, at *18.

Defendant asserts that it honestly and reasonably believed that Plaintiff had engaged in the misconduct for which it fired her because: (1) she was the individual who had access to the Draeger's email account where these changes occurred; (2) the phone calls stopped ringing to the main line and the emails stopped going to the common email box; and (3) Defendant discovered the emails at issue in Plaintiff's email box. (Doc. No. 34 at 8; Doc. No. 26-9 at 100-101).

Based upon the facts that were before Defendant at the time of Plaintiff's termination—the work (including product transfers and payables) left undone, the failure to update client notes, and the unilateral changing of the common email and phone number in what Defendant determined to be an attempt to deceive—the Court finds that Defendant's decision to terminate Plaintiff (even if based on ultimately incorrect factual determinations, as Plaintiff seems to assert[26]) was reasonably informed and considered. Plaintiff has not carried her burden to show that Defendant's reasons had no basis in fact or were insufficient to explain Defendant's actions.

The Court again notes that Plaintiff's attempts to show a retaliatory motive for her firing are also undercut by Defendant's continued attempts to provide reasonable accommodations for

---

[26] Plaintiff's denial of these facts (repeated verbatim at Doc. No. 32 at ¶¶ 97-99) is tepid at best: "Once Plaintiff was fully trained on her work, she was never behind in my (sic) work while she was employed for FMS. Plaintiff always updated her client notes and timely processed product transfers and all other necessary paperwork. The transfers were behind when she was assigned them as a job task; however, she caught them up when she was trained on that task." Plaintiff has presented no evidence, other than her own Declaration, to support this denial. She has not shown evidence, for example, that the product transfers were actually done or the client notes updated when she left for PTO in October 2017.

24

her fragrance sensitivities. The record reflects an employer who clearly did not ignore Plaintiff's concern; rather, Defendant made attempt after attempt to accommodate her alleged disability. The Court realizes that an employer initially can seek to accommodate an employee with a disability only to later retaliate against the employee for continuing to request accommodations—as might be the case if the employer got fed up with the ongoing requests. However, in the Court's view: (1) if an employer's initial response is to seek to accommodate an employee's disability, that attitude is a factor that tends to militate against a finding that the employer would have punished the employee for requesting an accommodation; and (2) the evidence here simply does not suggest that Defendant here went from seeking to accommodate Plaintiff's requests to seeking to punish her for her requests. Plaintiff has not shown that Defendant held a retaliatory animus.

For these reasons, even if Plaintiff had established a *prima facie* case of retaliation, which she has not, she has failed to show that Defendant's legitimate, non-discriminatory reasons for firing her were a pretext for retaliation. Defendant's Motion on this issue will be granted, and Plaintiff's ADA retaliation claim will be dismissed.

## CONCLUSION

For all the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. No. 22) will be granted, and Plaintiff's claims will be dismissed.

An appropriate Order will be entered.


*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE